# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNIE PEARL HILLIARD, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>NEW HORIZON CENTER FOR THE )<br>DEVELOPMENTALLY DISABLED, INC., )<br>)<br>    Defendant. ) | No. 16 CV 6374<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Annie Pearl Hilliard brings suit against her former employer, New Horizon Center for the Developmentally Disabled, Inc. ("New Horizon"), alleging that the private school violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, by engaging in a pattern of harassment against her and then terminating her. Hilliard also brings a common law cause of action for intentional infliction of emotional distress ("IIED"). New Horizon has moved to dismiss the IIED count pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth in this Memorandum Opinion and Order, New Horizon's partial motion to dismiss is denied.

## BACKROUND

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The following facts, as asserted in Hilliard's complaint, are therefore treated here as true. New Verizon hired Hilliard as a special education teacher in 1973, when she was 42

years old. Compl. ¶ 10; ECF No. 1. Her job duties included teaching children with developmental disabilities, and she spent a total of 39 years working for the school. *Id.* ¶¶ 10-11. During most of that time, Carol Kilcoyne—the only employee tenured longer than Hilliard—was New Horizon's Managing Director. *Id.* ¶ 12. But in late 2001, New Horizon began to terminate older, more experienced teachers and replace them with younger employees. *Id.* ¶ 13. As part of that process, New Horizon terminated Kilcoyne and replaced her with Patricia Palmer. *Id.* ¶ 13.

In 2012, Hilliard was 81 years old, making her the oldest employee working at the school. *Id.* ¶ 14. Hilliard asserts on information and belief that she was also the highest paid teacher at New Horizon at that time. *Id.* When Palmer became principal of the school, she started to initiate conversations in which she asked Hilliard about when she intended to retire. *Id.* ¶ 15. Hilliard "made it clear" that she had no immediate plans to do so. *Id.* ¶ 16. Hilliard asserts that from January 2012 through May 2012, New Horizon engaged in a pattern of harassment that was designed to make Hilliard's working conditions intolerable and to force her to end her employment with the school. *See id.* ¶ 17.

In particular, Hilliard "was chastised and rebuffed" on January 17, 2012, for taking paid time off ahead of a school holiday, even though she had followed New Horizon's procedure for requesting that time. *Id.* ¶ 18. Hilliard was required to explain why she needed the requested time off and to provide proof of that reason, and she was then denied pay for the holiday. *Id.* The next day, a child was injured in an accident in Hilliard's classroom. *Id.* ¶ 19. Hilliard was at lunch when the accident occurred, and a teaching assistant was attending to the room. *Id.* New Horizon blamed Hilliard for the accident, accusing her of violating its policy requiring that two teachers be present in each classroom. *Id.* ¶ 20. However, no such policy was actually recognized or followed at the school. *Id.*

Palmer confronted Hilliard about the incident every day between January 18 and January 27 of 2012, when she would enter Hilliard's classroom or call her out of the room to berate her. *Id.* ¶ 22. New Horizon publicly blamed Hilliard, accused her of neglect, and discussed the incident on multiple occasions during teachers' meetings. *Id.* ¶ 23. During this same time, Palmer also began "nitpicking" Hilliard's performance of her job and classroom duties as well as her supervision of her staff. *Id.* ¶ 24. Palmer also accused Hilliard of being "personally filthy and keeping a filthy classroom." *Id.* These "constant disruptions" interfered with Hilliard's ability to teach her class with regularity and to perform her other job duties. *Id.* ¶ 25.

Hilliard was forced to stay after school hours "in what amounted to a detention" for several days after the accident. *Id.* ¶ 26. During those periods, she was forced to document the incident, or to document lessons she had learned from the incident and to submit them to New Horizons to be critiqued. *Id.* On January 27, 2012, Hilliard was called to a meeting with Palmer, an attorney, and another unidentified man; at that meeting, she was suspended without pay from January 30 through February 3 of 2012. *Id.* ¶ 27. During that suspension term, Palmer went into Hilliard's classroom and arranged to have some of Hilliard's work materials and personal documents thrown out. *Id.* ¶ 28. When Hilliard returned to work, she was placed on probation and suspended from her teaching duties, and also was forced to complete both an internal training program and an external re-certification program. *Id.* ¶ 29.

Hilliard asserts that her retraining program was administered in a way that was designed to "humiliate her and make returning to work unbearable for her." *Id.* ¶ 30. She was isolated during this retraining process, was moved to a small room just outside of Palmer's office, and was "berated and treated with hostility." *Id.* Following several days of "humiliation, hostility, and constant berating," Hilliard become ill on February 9, 2012, and had to leave work early. *Id.*

¶ 31. Her physician later diagnosed her with major depressive disorder and prescribed taking a leave of absence, leading Hilliard to go on leave—as provided for by the Family and Medical Leave Act ("FMLA")—on February 10, 2012. *Id.* ¶ 32. During this medical leave, New Horizon sent Hilliard a series of letters stating that upon her return to work, she would be required to complete her retraining and recertification programs. *Id.* ¶ 33. Hilliard says this meant that she would "encounter more of the humiliation and criticism that caused her to become ill in the first place." *Id.*

During this medical leave, New Horizon also asked repeatedly for more information from Hilliard and her physician about her medical condition. *Id.* ¶ 34. Hilliard and her doctor complied with all of these demands. *Id.* ¶ 35. When Hilliard's FMLA leave expired in May 2012, her physician indicated to New Horizon that although her condition had improved, she needed more time to be on medical leave. *Id.* ¶ 36. Still, her physician indicated that she could return to work in time to start the new school year. *Id.* ¶ 37. On July 3, 2012, New Horizon denied Hilliard's request for more leave time and terminated her. *Id.* ¶ 38. New Horizon's stated reason for her termination was that she had voluntarily abandoned her position. *Id.* ¶ 39. But Hilliard asserts that during the 39 years she worked at New Horizon, she always performed her assigned job duties acceptably and in accordance with the school's standards. *Id.* ¶ 11.

Hilliard filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") in December 2012. *Id.* ¶ 5. The IDHR dismissed that charge on December 11, 2013, for lack of jurisdiction as to certain of her allegations and lack of substantial evidence as to her other allegations. *Id.* ¶ 6; Ex. A to Mem. in Supp. of Mot. to Dismiss, ECF No. 11-1. The IDHR informed Hilliard that she could seek review of the dismissal before the Illinois Human Rights Commission ("IHRC") by filing a request for review by March 17, 2014, or she could

"[c]ommence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice." Ex. A to Mem. in Supp. of Mot. to Dismiss. Hilliard then filed a request for review with the IHRC on March 14, 2014.[1] *See* Ex. B to Mem. in Supp. of Mot. to Dismiss, ECF No. 11-2. Almost two years later, on February 17, 2016, Hilliard filed a state court complaint against New Horizon, bringing claims for age and disability discrimination as well as IIED. *See* Ex. C to Mem. in Supp. of Mot. to Dismiss. Hilliard voluntarily dismissed that state court suit without prejudice on April 11, 2016. *Id.* She requested a Right to Sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued her a Notice of Right to Sue on April 19, 2016. *Id.* ¶ 9; Compl. Ex. A, ECF No. 1-1.

Hilliard then launched her current federal court suit on June 20, 2016. As of that date, her request for review was still pending before the IHRC. *See* Compl. ¶ 7. Her complaint alleges that New Horizon violated the ADEA (Count I) and the ADA (Count II), and also brings a cause of action for IIED (Count III). New Horizon lodged its motion to dismiss the IIED count on October 13, 2016. *See* Mot. to Dismiss, ECF No. 10.

**ANALYSIS**

To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir.

---

[1] Hilliard alleges in her complaint that she "timely filed a Request for Review" with the IHRC on April 28, 2014. Compl. ¶ 7. But New Horizon submitted—as an attachment to its brief—Hilliard's Notice of Filing before the IHRC, which indicates that she filed her request for review of the dismissal on March 14, 2014. This Court notes that it may consider the administrative filings attached to Hilliard's complaint and to New Horizon's brief without converting New Horizon's motion to dismiss into one for summary judgment. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'") (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *see also Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). This Court "must 'accept as true all factual allegations in the amended complaint and draw all permissible inferences'" in Hilliard's favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015)). However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

New Horizon argues that Hilliard cannot state a claim for IIED in this case because that claim is barred by the Illinois Human Rights Act ("IHRA"), 775 ILL. COMP. STAT. 5/1–101 et seq. For one, the defendant argues, Hilliard already chose to pursue her claims before the IHRC and her proceeding in that forum was still pending at least as of the date she filed the current suit, given her request for review.[2] *See* Mem. in Supp. of Mot. to Dismiss ("Mem.") at 4, ECF No. 11. For this point, the defendant points to an IHRA provision governing IDHR procedures, 775 ILL. COMP. STAT. 5/7A-102(D)(3), which provides:

> If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses

---

[2] Hilliard asserts that she does not currently have any claims pending before the IHRC, seemingly drawing a distinction between "pending" claims and claims, like hers, that the IDHR dismissed but for which the claimant has filed a request for review with the IHRC. *See* Resp. at 1-2, 1 n.1.

6

> to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

*Id.* Hilliard chose to file a request for review with the IHRC, which New Horizon characterizes as an "exclusive" election that barred her subsequently-filed state court suit and now bars the IIED cause of action she asserts in her federal court case. *See* Mem. at 4. In a second line of argument, New Horizon asserts that the IHRA preempts the IIED count because Hilliard bases that cause of action solely on the alleged civil rights violations underlying her other claims. *See* Mem. at 4-7. Finally, New Horizon argues that Hilliard has failed to allege the level of extreme and outrageous conduct required to state an IIED claim, and that Count III is untimely. *See* Mem. at 6; Reply at 5, ECF No. 20.

The IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILL. COMP. STAT. 5/8–111(D). The IHRA defines "civil rights violations" to include "only those specific acts" set forth in certain enumerated sections of the statute. 775 ILL. COMP. STAT. 5/1–103(D). One such section makes clear that it is a civil rights violation under the IHRA "[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILL. COMP. STAT. 5/2–102(A). The statute defines "unlawful discrimination" to include discrimination against a person because of her age or disability, among other characteristics. *See* 775 ILL. COMP. STAT. 5/1-103(Q).

7

At this stage of the litigation, Hilliard has set forth sufficient factual allegations to make out an IIED cause of action that is not preempted by the state statute. The Illinois Supreme Court has held that the IHRA preempts tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997); *see also Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994). In *Naeem v. McKesson Drug Co.*, 444 F.3d 593 (7th Cir. 2006), the Seventh Circuit affirmed a district court's determination that the IHRA did not preempt the plaintiff's IIED claim. Applying the Illinois Supreme Court's test from *Maksimovic*, the appellate court said that "the proper inquiry was not whether the facts that support [the plaintiff's] intentional infliction of emotional distress claim could also have supported a discrimination claim, but instead whether [the plaintiff] can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA." *Id.* at 604; *see also Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009). The Seventh Circuit further explained:

> The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish[ ] the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it.

*Id.* (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000)) (internal quotation marks omitted). The plaintiff in *Naeem* alleged conduct that was "not just sexually harassing," but included a pattern of behavior that "created impossible deadlines, set up obstacles to her performing her job, and sabotaged her work." *Id.* at 605. The Seventh Circuit concluded that her claim therefore rested on behavior "that would be a tort no matter what the motives of the defendant," such that IHRA preemption did not apply. *Id. See also Richards v. U.S. Steel*, No.

16-2436, 2017 WL 3687792, at *5 (7th Cir. Aug. 28, 2017) ("the factual overlap between [plaintiff's] statutory and emotional-distress claim does not matter . . . as long as she does not rely on rights or duties created by the Human Rights Act").

Here, Hilliard's IIED claim does not depend solely on New Horizon's allegedly discriminatory conduct. The common law tort of IIED has three elements under Illinois law: (1) "the conduct involved must be truly extreme and outrageous," (2) "the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress," and (3) "the conduct must in fact cause severe emotional distress." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Hilliard alleges that New Horizon engaged in a campaign to make her working conditions intolerable and to force her out of her job. As part of this alleged campaign, school personnel berated and publicly blamed Hilliard in connection with the January 2012 accident. School personnel accused her of neglect, discussed the incident at meetings with Hilliard's fellow teachers, criticized Hilliard's job performance, and accused Hilliard of being "filthy," all disruptions that allegedly interfered with Hilliard's ability to do her job. Hilliard also accuses New Horizon of forcing her to participate in a retraining program that was designed to humiliate her, subjecting her to isolation and hostile treatment. Hilliard alleges that after this "humiliation, hostility, and constant berating," she was diagnosed with major depressive disorder and forced to take a leave of absence. During that leave, she says, New Horizon informed her that the retraining process would continue upon her return.

The core of Hilliard's IIED theory, then, is not just that New Horizon discriminated against her on the basis of her age and disability, but that the school repeatedly subjected her to public shaming for a student's accident, denigrated her personal hygiene, and engaged in a

purposefully humiliating retraining program. This foundation for Hilliard's IIED claim, as pled, implicates duties that are distinct from those imposed on New Horizon by the IHRA.

These allegations are also sufficient to make Hilliard's claim for relief plausible at this early stage of the litigation. It is true that the tort of IIED "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Schweihs*, 77 N.E.3d at 63 (quoting Restatement (Second) of Torts § 46 cmt. d, at 73 (1965)). But courts "have found extreme and outrageous behavior to exist in the employer/employee context where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001). In addition, courts evaluating IIED claims may consider "whether the defendant knew the plaintiff was particularly susceptible to emotional distress and acted inappropriately despite that knowledge." *Cairel v. Alderden*, 821 F.3d 823, 836 (7th Cir. 2016).

Hilliard has alleged that her former employer repeatedly berated her, publicly blamed her for a student's accident, talked about that accidents at meetings with her fellow teachers, interfered with her ability to do her job, and forced her to undergo a distressing and isolating retraining process. She further alleges that this treatment caused her to become ill, and that while she was on leave in connection with a diagnosis of major depressive disorder, New Horizons informed her that she would be required to continue with the same intentionally humiliating retraining process upon her return. The duties owed to avoid such conduct have nothing to do with an employee's age; this sort of conduct could give rise to a plausible IIED claim whether the target was 30 or 80. And plausibility, at this stage, is all that is required.

Finally, this Court will not dismiss the IIED count based on New Horizon's arguments that it is time-barred or that Hilliard failed to adhere to the IHRA's procedural requirements. Hilliard's IIED count is subject to a two-year statute of limitations. *See Pavlik v. Kornhaber*, 761 N.E.2d 175, 186 (Ill. App. Ct. 2001) (citing 735 ILL. COMP. STAT. 5/13-202). While a plaintiff's cause of action generally accrues when "the interest at issue is invaded," *id.*, Illinois courts have held that when "a tort involves continuing or repeated injurious behavior, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease." *Id.* at 186-87 (quoting *Hyon Waste Mgmt. Servs., Inc. v. Chicago*, 574 N.E.2d 129, 132 (Ill. App. Ct. 1991)) (internal quotation marks omitted). Hilliard argues that Count III is timely because it relates back to the charge she originally filed with the IDHR. Sur-reply at 2, ECF No. 26. But the history of the administrative proceedings that predated this suit is unclear. This record does not reflect the exact substance of Hilliard's original charge with the IDHR, for example, and neither party has attempted to allege or explain how, if at all, the EEOC Right to Sue letter relates to the request for review that Hilliard filed with the IHRC. In addition, a "statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

At this stage of the suit, on the basis of the current pleadings, this Court declines to find that Hilliard's IIED claim is untimely or procedurally barred. It remains open, of course, for the defendant to develop those potential defenses during discovery.

\* \* \*

For the foregoing reasons, New Horizon's motion to dismiss Count III of Hilliard's complaint is denied.

Date: September 26, 2017

John J. Tharp, Jr.
United States District Judge