IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNIE PEARL HILLIARD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NEW HORIZON CENTER FOR THE )<br>DEVELOPMENTALLY DISABLED, )<br>INC., )<br>)<br>Defendant. ) | No. 16 C 6374<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Annie Pearl Hilliard was terminated from her position as a special education teacher at New Horizon Center for the Developmentally Disabled on July 3, 2012, when she was 81 years old. Ms. Hilliard alleges that she was subjected to a campaign of harassment leading up to her termination and brings claims of age and disability discrimination and intentional infliction of emotional distress. New Horizon disputes Ms. Hilliard's claims and attributes her termination to voluntary abandonment of her post: after a student was injured in her classroom, Ms. Hilliard was briefly suspended without pay and was placed on a retraining program, from which she took an extended period of leave for major depressive disorder. New Horizon has moved for summary judgment. For the reasons stated below, the defendant's motion for summary judgment is granted.

### BACKGROUND

Plaintiff Annie Pearl Hilliard was hired as a special education teacher at New Horizon in 1973, when she was 42 years old. Ms. Hilliard oversaw a classroom of five students with disabilities and four other staff members who worked with the students on a one-to-one basis. DSOF ¶ 34. Beginning in or around 2011, Ms. Hilliard avers, New Horizon began purging older staff members. She alleges, and the defendant disputes, that she was "constantly hounded" about

when she was going to retire. Pl.'s Resp. DSOF ¶ 7. In her deposition testimony, however, Ms. Hilliard recalls New Horizon administration specifically asking about her retirement only once. *See* Hilliard Dep. 13:11–14:12, ECF No. 84-2. In addition, New Horizon Principal Patricia Palmer asked all teachers each year, including Ms. Hilliard, whether they intended to return for the next school year. Pl.'s Resp. DSOF ¶ 8. Ms. Hilliard also alleges that she was "chastised and rebuffed" for taking paid time off before a school holiday on January 17, 2012 and "even then was denied pay for the holiday," though New Horizon's payroll records indicate that she was in fact paid for that time off. *Id.* ¶ 59.

New Horizon maintained a policy that two adults were required to be in the classroom with students at all times. If a teacher or staff member had to leave the room, they were expected to call another teacher or the principal to substitute in. DSOF ¶ 9. Teachers were expected to stagger their staff's lunch breaks to support this policy. *Id.* ¶¶ 11, 25. The parties dispute how rigorously the policy was enforced prior to the incident in Ms. Hilliard's classroom. *See* Pl.'s Resp. DSOF ¶ 9. Ms. Hilliard correctly asserts that the two-adult guideline states that every student "should, when feasible, always be in the care of at least two staff members," *id.*, but the policy uses more mandatory language with respect to classrooms, stating that there "should always be more than one employee in a classroom at all times. In the event an employee must leave the room for a specific reason, the employee must request help from another classroom," Abuse Prevention Policy, Ex. 28 at 5, ECF No. 79-7. While the two-adult guideline was not part of the New Horizon employee handbook,[1] it was a written policy and the New Horizon teachers received training on the policy at staff meetings on April 29, 2011 and November 1, 2011. Pl.'s Resp. DSOF ¶¶ 39-40.

---

[1] While the Abuse Prevention Policy was not included in the employee handbook, the handbook contains "a list of violations that may warrant discipline or discharge, the first of which

2

On January 18, 2012, Ms. Hilliard left her classroom for lunch, leaving one staff member with five students. DSOF ¶ 34. Ms. Hilliard did not request staffing assistance prior to leaving. *Id.* While Ms. Hilliard was out of the room, a student fell from a "mat table"[2] on to a tile and concrete floor, driving a tooth through her gums, shattering several teeth, and opening an oral wound that bled profusely. *Id.* ¶ 35. Ms. Hilliard felt that she was blamed for the student's accident. In the period following the incident, Ms. Hilliard alleges, Principal Palmer "began to criticize Ms. Annie's job performance, her staff supervision and accused Ms. Annie of keeping a filthy classroom." Pl.'s Am. Statement Add'l Facts ¶ 18, ECF No. 83. Principal Palmer "suddenly began visiting the classroom on a daily basis" and frequently calling Ms. Hilliard to the office. *Id.* ¶¶ 17-18. Two other staff members "testified that on some of the occasions when Ms. Annie would return from the office she was visibly upset and teary eyed." *Id.* ¶ 18. On January 26, New Horizon administration began an investigation into the circumstances surrounding the student's injury, and the staff member who was present during the accident was terminated on January 27. Pl.'s Resp. DSOF ¶¶ 36-37. Ms. Hilliard was suspended without pay from January 30 to February 3, 2012. *Id.* ¶ 41. While Ms. Hilliard was on leave, her classroom was cleaned and some of her personal belongings were allegedly removed and discarded. Pl.'s Am. Statement Add'l Facts ¶ 22, ECF No. 83.

When she returned from her suspension, Ms. Hilliard was removed from the classroom and began a period of retraining that included computer training on Illinois Alternate Assessment test administration, speech-language pathology training, and writing a report on the CCTV recording

---

is 'Neglect of duty that threatens the well-being or safety of an adult, student, employee or NHC.'" Pl.'s Resp. DSOF ¶¶ 27-28.

[2] The record does not make clear what a "mat table" is, but the Court infers that it is a somewhat elevated enclosed platform with a padded bottom surface that enables a caretaker to have easier access to the child than if the enclosure were at floor level.

of the student's accident. Pl.'s Resp. DSOF ¶¶ 42, 46-50. Ms. Hilliard asserts that the retraining program was "administered in a manner designed to humiliate her and make returning to work unbearable for her." Compl. ¶ 30. Ms. Hilliard also alleges that other staff members witnessed her being berated and criticized by New Horizon administration; when interviewed, no staff member reported witnessing such conduct.[3] Pl.'s Resp. DSOF ¶¶ 52-58.

On February 9, 2012, Ms. Hilliard became ill and left the school; she did not return, and her retraining was never completed. *Id.* ¶¶ 51, 60. Her doctor sent New Horizon a letter on February 14 requesting three months of leave, asserting that being blamed for the accident had precipitated Ms. Hilliard's major depressive disorder. PSOF ¶ 26. At that time, Ms. Hilliard's doctor said, she could not "perform any job functions." Pl.'s Resp. DSOF ¶ 61. Ms. Hilliard was approved for FMLA leave on March 9, 2012. *Id.* After twelve weeks of FMLA leave had been exhausted, Ms. Hilliard's doctor requested another three months of leave. *Id.* ¶ 64. New Horizon granted Ms. Hilliard an additional seven weeks of leave. *See* Mem. Supp. MSJ at 14, ECF No. 79-3. On July 3, 2012, however, Principal Palmer wrote Ms. Hilliard a letter stating that her "request for additional leave had to be declined and advising Plaintiff that [New Horizon] could no longer hold her job open due to the approaching school year." Pl.'s Resp. DSOF ¶ 67. Ms. Hilliard does not attribute New Horizon's refusal to extend her leave to her age (rather to her medical condition). *Id.* ¶ 68. New Horizon terminated Ms. Hilliard's employment in the July 3, 2012 letter on the grounds that she had voluntarily abandoned her position. Compl. ¶¶ 38-39.

---

[3] While staff member Rosalind Eubanks testified that she saw Ms. Hilliard leaving the office with tears in her eyes, saying that she was being blamed for the student's accident, Ms. Eubanks did not actually witness any interaction between Ms. Hilliard and New Horizon administration. Eubanks Dep. 48:13–49:9, ECF No. 83-1.

4

Ms. Hilliard filed a charge of discrimination, Charge No. 2013-CA-1089, with the Illinois Department of Human Rights in December 2012. The charge was dismissed for lack of substantial evidence on December 11, 2013. On April 28, 2014, Ms. Hilliard filed a request for review with the Illinois Human Rights Commission; the matter is still pending and undecided. On April 13, 2016, Ms. Hilliard requested a right-to-sue letter from the EEOC, which she received on April 19, 2016. Pl.'s Resp. DSOF ¶ 4. She brought this suit on June 20, 2016, asserting claims of age discrimination, disability discrimination, and intentional infliction of emotional distress. New Horizon has moved for summary judgment on the claims.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). When considering the summary judgment materials, the Court must "construe all facts and draw all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011).

To state a prima facie age discrimination claim under the ADEA, a plaintiff must show that "(1) she is a member of a protected class; (2) her performance met her employer's legitimate

5

expectations; (3) despite this performance, she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of the protected class more favorably." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007). The parties agree that Ms. Hilliard is a member of a protected class because she is over age 40 and that her suspension and termination constitute adverse employment action. *See* Mem. Supp. MSJ at 9-11, ECF No. 79-3. The parties dispute whether Ms. Hilliard met New Horizon's legitimate expectations and whether similarly situated employees were treated more favorably. Ms. Hilliard points to her glowing performance reviews, *see* Resp. MSJ at 10, ECF No. 82, while New Horizon highlights testimony from another staff member asserting that Ms. Hilliard loved her students but was passive and did not interact with them in the classroom, did not keep lesson plans, and spent much of the school day sitting in her chair. Reply MSJ at 4, ECF No. 84. This disagreement is not material, however, because the parties agree that Ms. Hilliard's suspension was not based on general dissatisfaction with Ms. Hilliard's performance but by her failure to meet the employer's legitimate expectation of ensuring proper staffing in accordance with the two-adult policy.

In any event, Ms. Hilliard cannot show that similarly situated employees outside the protected class were treated more favorably. The paraprofessional aide who was present during the student's accident was terminated while Ms. Hilliard was suspended and assigned to retraining. Pl.'s Resp. DSOF ¶ 37. A teacher who was under age 40 was also terminated for voluntary job abandonment in June 2012. *See* IDHR Charge at 15, ECF No. 79-5. Another New Horizon teacher, Pamela Koester, had a student fall from a mat table and sustain an injury in her classroom several years prior but was not suspended or required to complete a retraining program. Pl.'s Am. Statement Add'l Facts ¶ 20, ECF No. 83. That incident, however, occurred under adequate staffing conditions. *See* Mem. Supp. MSJ at 11, ECF No. 79-3 ("Pamela Koester is not similarly situated

to Hilliard because she did not mismanage her staff as Plaintiff did, violate work rules, and did not leave the classroom understaffed on a personal break without securing assistance."). "To reveal discriminatory discipline, a plaintiff must produce evidence that he engaged 'in identical or comparable misconduct' but received harsher punishment." *Miller v. Saul*, No. 19-2954, 2020 WL 2316062, at *5 (7th Cir. May 11, 2020) (citing *Rozumalski v. W.F. Baird & Assocs.*, 937 F.3d 919, 927 (7th Cir. 2019)). Here, Ms. Hilliard has not shown that the accident in her classroom was comparable to that in Ms. Koester's classroom because of the failure to adhere to the two-adult guideline. Ms. Hilliard's direct evidence of age discrimination is similarly unavailing: despite her reference to being "constantly hounded" about when she would retire, in her deposition testimony she could recall only one such instance. Otherwise, Ms. Hilliard was subject to a common requirement, along with all other teachers, to report whether she planned to return for each subsequent school year. These contentions are insufficient to support a jury finding of age discrimination.

Ms. Hilliard also claims that New Horizon discriminated against her on the basis of her disability. To establish a prima facie claim of disability discrimination under the ADA, Ms. Hilliard would have to show that "(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation, and (3) she has suffered from an adverse employment decision because of her disability." *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). While the parties do not dispute that Ms. Hilliard was disabled within the meaning of the ADA, New Horizon asserts that Ms. Hilliard was not a qualified individual with a disability and that her termination was not "because of" her disability. The Court agrees. Ms. Hilliard's doctor indicated in a letter requesting leave that Ms. Hilliard could not "perform any job functions." Pl.'s Resp. DSOF ¶ 61.

7

Over the course of her leave, Ms. Hilliard's condition improved only "somewhat," and she was never medically cleared to return to work. *See* Mem. Supp. MSJ at 2, ECF No. 79-3. "An inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability." *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual."). Because she was unable to perform her essential job functions with or without a reasonable accommodation, Ms. Hilliard was not a qualified individual with a disability entitled to ADA protection.

Similarly, Ms. Hilliard was not entitled to an extended period of leave as a reasonable accommodation of her disability:

> The ADA is an antidiscrimination statute, not a medical-leave entitlement. The Act forbids discrimination against a "qualified individual on the basis of disability." A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." So defined, the term "reasonable accommodation" is expressly limited to those measures that will enable the employee to work. An employee who needs long-term medical leave *cannot* work and thus is not a "qualified individual" under the ADA.

*Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (citations omitted). Rather than being terminated because of her disability, the record shows that Ms. Hilliard was terminated because she took an extended period of medical leave and was unable to commit to returning for the next school year. "Inability to work for a multi-month period removes a person from the class protected by the ADA." *Byrne*, 328 F.3d at 381. New Horizon was required to fill her position and did not act in a discriminatory fashion when it terminated Ms. Hilliard.[4]

---

[4] To the extent that Ms. Hilliard alleges that New Horizon failed to engage in the interactive process required by the ADA, failure to engage in the interactive process is not an independent basis for liability. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000). That failure "is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). Here,

As to Ms. Hilliard's claim of intentional infliction of emotional distress, New Horizon asserts that the claim is preempted by the Illinois Human Rights Act. As Ms. Hilliard points out, the Court addressed that contention at the motion to dismiss stage and ruled that the claim was not preempted because it was based, at least in part, on conduct separate from Ms. Hilliard's discrimination complaints. Mem. Op. & Order at 10, ECF No. 28 ("This foundation for Hilliard's IIED claim, as pled, implicates duties that are distinct from those imposed on New Horizon by the IHRA.").[5] Alternatively, New Horizon suggests that the claim is time-barred. IIED claims have a two-year statute of limitations from "the last date of injury or when the tortious act ceases"; here, Ms. Hilliard last had contact with New Horizon on July 3, 2012 and filed this suit in June 2016. Mem. Supp. MSJ at 6, ECF No. 79-3. Ms. Hilliard argues that because her IIED claim relates back to her IDHR charge, her claim is not time-barred. While the facts that comprise Ms. Hilliard's IIED claim were included in her IDHR charge, such that New Horizon was likely on notice of her contentions, the Illinois Human Rights Commission has not ruled on Ms. Hilliard's request for review, and an EEOC right-to-sue letter is not a substitute for a final order by the IDHR in exhausting administrative remedies. *See, e.g.*, *Jimenez v. Thompson Steel Co., Inc.*, 264 F. Supp. 2d 693, 695 (N.D. Ill. 2003).

---

as noted, Ms. Hilliard sought only extended leave and was not a qualified individual during that period. Moreover, Ms. Hilliard's doctor reported that New Horizon was in such frequent contact with Ms. Hilliard during her leave that "the repeated phone calls from NHC was interpreted as harassment by Ms. Hilliard." Pl.'s Am. Statement Add'l Facts ¶ 30, ECF No. 83.

[5] New Horizon also suggests that Ms. Hilliard's IIED claim is barred by the Illinois Workers' Compensation Act, 820 Ill. Comp. Stat. 305 *et seq.* There is an intentional tort exception to workers' compensation exclusivity when the employee can show that the employer had specific intent to injure the employee. *See, e.g.*, *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 213, 569 N.E.2d 1211, 1215-16 (Ill. App. Ct. 1991). Because Ms. Hilliard does not present facts demonstrating extreme and outrageous conduct, however, the Court will not consider this line of reasoning further.

Even if her claim were timely, however, Ms. Hilliard has not adduced affirmative evidence of "extreme and outrageous conduct" sufficient to survive summary judgment. Specifically, she alleges that she was "chastised and rebuffed" for taking paid time off before a school holiday, that Principal Palmer harassed her after the student's accident, "nitpicking Ms. Hilliard's performance, classroom duties, supervision of staff and even accus[ing] her of being personally filthy and keeping a filthy classroom," that her personal belongings were discarded while she was on suspension, and that her retraining program was designed to humiliate her. Ms. Hilliard's affidavit is the sole support for many of these allegations, but even accepting them as true, they do not approach the extreme level of antagonistic or humiliating conduct necessary to support a claim for intentional infliction of emotional distress. Courts "have been hesitant to find intentional infliction of emotional distress in the workplace" and do so only when the employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006). While the Court does not doubt that the accident in Ms. Hilliard's classroom and its aftermath were upsetting, in "the workplace setting . . . harshly criticizing or insulting an employee is not enough to constitute extreme and outrageous conduct." *McKay v. Town and Country Cadillac, Inc.*, 991 F. Supp. 966, 972 (N.D. Ill. 1997) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-03 (7th Cir. 1993)). Most situations in which an employee is suspended or terminated result in personal embarrassment and emotional distress for the employee; were that sufficient to support a tort claim, virtually every terminated employee would be able to sue their employer even when the termination was justified and nondiscriminatory. That is not the law. Because Ms. Hilliard has not adduced affirmative evidence of extreme and outrageous conduct sufficient to support her claim for intentional infliction of emotional distress,

10

nor has she shown evidence sufficient to create a jury question with respect to age and disability discrimination, summary judgment must be granted for New Horizon.

\* \* \* \* \*

The undisputed facts in this case show that Ms. Hilliard violated a safety guideline designed to protect children in her care. Rather than terminate her for that violation, her long-time employer imposed a brief suspension and a requirement for additional training and permitted Ms. Hilliard to continue her employment. When Ms. Hilliard was medically unable to complete that training, her employer did not terminate her; rather, it gave her extended medical leave to address her condition. Only when Ms. Hilliard was unable to return to work following that extended leave did her employer terminate her employment. These facts do not give rise to any claim by Ms. Hilliard against New Horizon. Accordingly, the defendant's motion for summary judgment is granted. Final Judgment will be entered for New Horizon.

Date: June 3, 2020

John J. Tharp, Jr.
United States District Judge